The next case today is Jampa Gonpo v. Sonam's Stonewalls & Art, LLC, et al. Appeal number 21-1352. Attorney Merrigan, please reintroduce yourself for the record and proceed with your argument. Yes, good morning. Thomas Merrigan for the appellant. Your Honor, may I reserve one minute for rebuttal? Yes. Thank you. In this case, the appellant is a defendant in a Fair Labor Standards Act case that was tried in December of 2019 in the District Court in Springfield, Massachusetts. On appeal, the appellant challenged two evidentiary rulings that were both adverse and not harmless. The first ruling that the defendant appeals from is a denial of his against the plaintiff. The second ruling involved the court's legal ruling with respect to the admission of testimony based on Federal Rules of Evidence 406 concerning evidence of business habit or pattern. With respect to the exclusion of the impeachment evidence, I would suggest that the trial judge fail to employ the two-step analysis that is required by Federal Rule 404B with respect to bad acts. The second significant error by the trial judge was his reliance on a case called Johnson v. King-Richardson Company, which is a First Circuit court from 1930. I would suggest that in conducting the two-step analysis that is required to evaluate evidence offered under Rule 404, the... Mr. Morgan, there was an exchange between counsel and the court where the court asked, so you want evidence in that there was a rape allegation, that there was an eventual trial, that he was acquitted, and the response was, I don't want all of that. So it looked like the court was considering it, but considering it only to the extent that the court was going to get the whole story. Well, Your Honor, I think that in the moment when that exchange took place, it was more of a humorous response from me suggesting to the court that, you know, I'd like to have my cake and eat it too, and it wasn't as if the court was actually entertaining the notion that it would permit the evidence based on the entirety of the acquittal. In fact, as I recall, the tone of the court was such that it was sort of dismissive of the idea that the evidence was going to come in, but if it was coming in at all, you certainly had to take it for the entirety of it. And I know that the Plaintiff's Counsel raised that issue in his brief, but I would suggest to the court that that exchange is far too simple and insufficient to make it anything dispositive in this case, particularly because it was incumbent upon the judge to fashion the ruling that balanced the first and second step analysis under 404 be required. It would not be sufficient for the judge if there was a legal ruling required based on the entire record before him to simply depart from what would have been the appropriate legal ruling based on an offhand comment in jest, and I know this is a cold record, so the court wouldn't know the jest nature of it, but I was sort of chuckling and said, well, I don't really want all of it. Well, based upon the evidence that was offered, based upon your client's lack of any kind of prejudicial. Well, it was extremely prejudicial because the way in which a Fair Labor Center Act case has to be presented is first the defendant or the plaintiff must present credible evidence of unpaid wages, and so the way in which my client could have refuted that was by impeaching his client on the basis of an ulterior motive to intimidate his employer's daughter to recant. As the evidence at trial showed, the bookkeeper office manager for the defendant employer was incompetent, and she was also a thief, and so he was deprived of the existence of those records, and so he wasn't able to refute what was the plaintiff's allegation. I'm sorry, was the bookkeeper prosecuted? No, no, no, she wasn't, and it's part of the difficulty, I think, of Mr. Lama as a Tibetan immigrant, blue-collar kind of business approach. He obviously made lots of mistakes, but they were not malicious, and they weren't with intent to deny anybody wages. So under the Mount Clemens burden shifting, once Mr. Gumpo testified without impeachment and without any way of attacking his credibility in showing that he had ulterior motives, the burden shifts, and then without the presence of any records to establish true and accurate records, the defendant's hands were tied. They lost by default. So in the context here, it was extremely relevant, it was especially relevant, and it was very prejudicial and harmful to keep this out, and certainly by including the evidence that he had been acquitted, there would have been an ample way to balance out whatever concern about prejudice and harmful effect that that evidence would have possibly been detrimental to the plaintiff. I point out that in criminal cases, we see these convictions affirmed all the time, where the prosecution includes evidence of of other conduct or bad conduct, but it is nevertheless not detrimental where constitutional rights are at stake. And so I would suggest that there was ample opportunity for the court to balance all of the equities, all of the interests in this particular case without doing disservice to Mr. Gumpo the plaintiff, but in order to ensure that the defendants had a fair trial, because it was their only, their single, only opportunity to refute the truthfulness of the allegations made by Gumpo. And without showing that Gumpo had ulterior motives, why would a jury disbelieve him? Counsel, let me ask you. I know you did follow the motions in Lemonade that were denied, but the case went to trial, there's jury instructions. Did you preserve those objections during the charge conference or after the deliberations, or simply you're relying on, you know, you filed the Lemonade, the judge denied him, and then you proceeded. Your Honor, I didn't renew it because based on my interpretation of the federal rule, and I think it's 103, where it is amply clear that the issue was raised in the court below and unambiguously rejected by the trial court, that's sufficient to preserve the appellate review. Thank you. I would suggest also that the judge really went down a, you know, inappropriate path when he went to the case of Johnson versus King-Richardson, and extrapolated from that in the context of this case, where that case really was about whether or not a motion to dismiss would lie where somebody otherwise had a lawful cause of action merely because they had bad motives in bringing it. And on that framework, that case has nothing to do with what we're doing here, or what we're talking about here. The defendant's llama never contended that Mr. Mr. Gampo didn't have a right to make his claims. So at one point, the court said that it's possible that the allegations motivated your client, but that it would be improper, unfair, and unnecessary to allow the introduction of the rape allegation. Why isn't that enough for us to conclude that that was balancing? It was, well, because it simply wasn't. The first circuit, I think Judge Sala said the lodestar is a two-step process. But conceding that what could have motivated him implicit in that is that he saw some probative value in the evidence you were seeking to introduce. But then he went on to reject it because it was inappropriate and unfair. Well, he went on and rejected it because it was unfair. Why it's insufficient is because all of that was anchored in the judge's determination that Johnson v. King Richardson was his guiding framework. And he felt that because of the application of that case, the evidence he said was irrelevant. While he, on one hand, said in passing that it may have been motivated, his affirmative ruling was it was irrelevant and it was immaterial. And so that passing reference, Your Honor, I would respectfully suggest simply doesn't do justice to the requirements of the examination that he was required to undertake in the context of this case where my client had zero other opportunity to refute the allegations set forth by the plaintiff in light of the fact that it was undisputed that his bookkeeper was incompetent and deceptive. When you say it was undisputed, are you saying that there was a concession by the plaintiff of that fact? I think, in so many words, the plaintiff did concede that because I think at one point he argued that there was no evidence of prosecution or there was no evidence that she testified. And I can't pinpoint it for sure, but it wasn't a stipulation, if that's what the court is saying. It wasn't a contested issue with any vigor by the plaintiff during the case or during the trial. Other questions from the court? All right. Thank you, Mr. Merrigan. You've reserved some time. Thank you. Ms. Troy. Good morning, Your Honors. I'm going to address each of the appellants' arguments in turn. The first argument is that he made his comments in jest. I point the court to the record at page 99. In fact, the colloquy between the court and Mr. Merrigan extends beyond a simple exchange, specifically, as Judge Thompson pointed out, the court asked, so you want evidence that there was a rape allegation in eventual trial? And Mr. Merrigan said, I don't want any of that. And the court responded, you're certainly not going to get one without the other. And Mr. Merrigan said, I understand that. I'm not asking for that. So to the extent that the court certainly did consider potentially giving a limiting instruction, but the appellants basically explicitly opposed to that possibility and to now suggest that and to characterize it as an offhand comment as in jest, and I want to have the cake and eat it too, is simply an incorrect reflection of the record. In the defendant, or in the appellant's reply brief, he also makes a number of misrepresentations, specifically that the court failed to consider the probative value and prejudice under F.R.E. 403. And the record clearly reflects that the court properly determined the probative value of the rape claim is outweighed by the unfair prejudice to the appellee, John Pagumpo. Not only has Judge Thompson already pointed out that the judge did consider the probative value in terms of showing potentially the motivation of the plaintiff that such motive would show plaintiff's wage violation claims are fabricated, the judge goes on to say that provided how incendiary the evidence is, the court think it would be improper, unfair, and unnecessary to allow its introduction to the jury to decide whether a plaintiff has a valid claim or not. And that to me is pretty clearly a 403 balancing test in terms of the specific district court order. What do you make of the court's reference to this Johnson case, which didn't involve a balancing? Yes, in fact, it was decided way before the rules came into effect. Yes, your honor, the idea is that the motivation as to whether or not, the motivation, whether it is good or bad, let me find the exact quote that the judge gave. One second. He said that where a suitor is entitled to relief in respect to the matter concerning which he sues, his motives for bringing suit are immaterial. That's what the court said. And I believe that... So that's incorrect. You're saying the court is incorrect in that regard? I guess I'm asking you, isn't the court incorrect because motive, is motive always material? I believe that motive is material and the judge acknowledged it as such in its electronic order stating that, you know, it can potentially go to show that the plaintiff has fabricated his claim. However, it is extremely tenuous at best. In the motion in limine hearing transcript, the judge stated someone could be subject to a wrong in an economic way and seek redress for that economic wrong for someone's good motivational factors or questionable motivational factors. It really doesn't matter if it was an actual wrong that deserves to be redressed. And that's the issue in this case. And something else that needs to be, you know, mentioned is that the defendants kept on stating that the inability for defendants to discredit Gumpo's testimony makes it so that there is no due process when in fact the appellants presented testimony by several of Gumpo's co-workers who worked alongside him on the same construction projects to specifically negate the inferences that can be drawn from Gumpo's testimony to the extent that now the appellant's attorney is turning around and calling their own accountant an incompetent and a thief and stating that, you know, because they failed to keep records the appellant somehow... Counselor, how did that play out at trial, this bookkeeper issue? Because the bookkeeper did not keep the records, you know, the plaintiff's testimony... The testimony of whom, sorry? The defendant. How did they, at trial? I'm trying to figure out because they're saying that essentially that there was a concession that the bookkeeper was a crook, an incompetent. Was that some kind of concession at trial? They conceded that no records were kept, I believe. That's it, okay. Okay. Yeah, and because of that, under the Fair Labor Standards Act, because no records are being kept, the plaintiff's testimony, in this case the appellee's testimony, is given great weight. But that doesn't mean that the defendants, or here the appellants in this case, did not present counter-acting testimony, which they did by presenting that of his co-workers. So that is basically, you know, the reason why we believe that the court is finding with respect to the appellant's motion in limine for leave to impeach Gampo's motive for bringing his wage and hour lawsuit, like the court basically did not err, and that the court here, your honor, should deny the appellant's motion or brief in that regard. Specific to the issue of the appellant's notice of appeal, and I think first off, we just wanted to quickly state that, you know, the in fact did not move timely to amend their notice of appeal. I stated, you know, the issue was waived because the appellees did not bring it back up in the opposition. But how are you prejudiced by that failure? I mean, prejudice is a consideration when we're reviewing this claim. Yes, your honor, definitely it is one of the considerations. However, the way in which the case law works in this circuit is that where the appellants designate by item, which portion of the interaction... But how are you prejudiced? You were eventually given notice that they wanted us to consider another issue, and it was done, I believe, before briefing was submitted. So how were you prejudiced by that? I think the prejudice would be in the less of an issue. Thank you. All right, one sec. Yeah, so the appellant, in fact, failed to move for an extension and provided neither good cause nor excusable neglect. That is all part of our opposition that we filed on August 27 of last year. And in fact, they had access to the transcript, so their statement that, you know, they don't have access to the transcript, like, doesn't make any sense at all. And should the court consider their brief with respect to Gietzo's testimony, notwithstanding our position, which is that the notice to amend the notice to we just want to correct, again, Mr. Merrigan's misrepresentation in his reply brief, where he states that, in fact, Gietzo only testified as to his personal experiences and not the experiences that are common to all employees. And here I point your honors to the record at 156, where Gietzo testified when asked, when you say an organizer, are you referring to a pocket calendar, a day planner, something like that? He says, it's more like a calendar. And then the attorney asked, okay, and who recorded your working times and the calendar you were given? And then he answers, the process was recorded every day by ourselves. And then at the end of month, it's shown to the boss and he paid us. So from that testimony, as well as from the remaining of the appellee's argument in our opposition brief, it seems clear to us that the judge's admission of Gietzo's testimony was proper under the 406. Thank you, counsel. Additional questions from the court? All right. If you would mute your audio and video, Mr. Merrigan, you have reserved a minute. Yes, thank you. I'd like to start with addressing Judge Thompson's questions about whether or not the comment by me to the court was indicating I didn't want it all in. And as attorney Troy pointed out, the rest of that dialogue was the judge said, well, you're not going to get it. You're not going to get one without the other. And I replied, I understand. I'm not asking for that. That was the sort of a genuine gist of what the conversation was, reflecting back that the first was somewhat of a flip response. With respect to the notice of appeal, in this case. Mr. Merrigan, you know, the problem is we have all this jurisprudence where we're always talking about the cold record before us. I know. We just got the transcript and it reads the way it reads. I know. And as I was saying that to you, I'm saying to myself, you know, you just can't say things because the cold record doesn't reveal what what's really going on. With respect to the notice of appeal, by virtue of the fact that I filed a motion to amend, gave them much sooner notice of my interest in the issue than if I'd simply filed appeal from the judgment and they wouldn't have found out so much later when they got my brief. And I would suggest with respect to the fact that he said ourselves is insufficient to satisfy the rather demanding requirements, the foundational requirements of Rule 406 to admit business record, business pattern evidence. Gaiazzo's testimony was not presented as evidence of the organization. You can see that in the closing argument in the way in which Attorney Schweitzer argued that his testimony was basically more evidence of bad conduct by Mr. and it was improperly admitted. And I would rest on my brief for the rest of my arguments. All right. Thank you. Thank you very much. That concludes argument in this case. Attorney Merrigan and Attorney Troy, you should disconnect from the hearing at this time.